IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SHAUN DURAN et al., on behalf of themselves
and others similarly situated,

      Plaintiffs,

      v.                                                            Civ. No. 23-417 SCY/JFR

NEW MEXICO DEPARTMENT OF
WORKFORCE SOLUTIONS, and SARITA
NAIR, in her official capacity as secretary of the
New Mexico Department of Workforce
Solutions,

      Defendants.

**MEMORANDUM OPINION AND ORDER
REMANDING CASE TO STATE COURT**[1]

Plaintiffs' complaint brings causes of action arising under state law which challenge whether a state agency complied with federal law in administering benefits pursuant to the federal Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). Defendants removed this case to federal court, contending that the federal questions implicated by the complaint are so "substantial" that they can support federal-question jurisdiction in the absence of any cause of action arising under federal law. Under relevant Supreme Court precedent, the Court disagrees and so will remand this case to state court.

**BACKGROUND**

Plaintiffs filed this putative class action complaint in state court on March 27, 2023 against the New Mexico Department of Workforce Solutions ("NMDWS") and Sarita Nair, secretary of NMDWS ("Defendants"). Doc. 10 at 3. The complaint alleges that Defendants made

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct all proceedings and to enter an order of judgment. Docs. 8, 12-14.

various errors in awarding unemployment benefits pursuant to the CARES Act, resulting in overpayments of those benefits, and then unlawfully sought to claw these overpayments back from Plaintiffs and similarly situated class members. The complaint brings five state-law causes of action: (1) violations of the New Mexico State Constitution; (2) violations of the New Mexico State Rules Act and the Workforce Solutions Department Act; (3) violations of the New Mexico Unemployment Compensation Act; (4) breach of contract; and (5) equitable estoppel. Doc. 10 at 64-73.

Defendants removed the case to federal court on May 12, 2023, citing 28 U.S.C. § 1331 and invoking no other grounds for removal. Doc. 1 at 5 ¶ 15. The Notice of Removal highlights the various references the complaint makes to federal law:

> Count I is predicated upon Plaintiffs' view that NMDWS' alleged noncompliance with federal directives and interpretations of the CARES Act . . . resulted in a deprivation of property without due process of law under the New Mexico Constitution. Complaint, ¶¶ 293 to 298.
>
> Count II is predicated on Plaintiffs' view that [NMDWS] failed to promulgate agency rules regarding waivers of federal pandemic benefits and has "allowed for a narrower category of waivers than the categories authorized by the federal government" under the CARES Act. Complaint, ¶ 305.
>
> Count III is predicated upon Plaintiffs' view that NMDWS "fail[ed] to fully cooperate" with the [federal] Secretary of Labor in its implementation of the CARES Act by not complying with federal statutes, regulations and directives . . ., which Plaintiffs attempt to characterize as a violation of NMSA 1978, § 51-1-31. Complaint, ¶¶ 307 to 314.
>
> Count IV is predicated on Plaintiffs' view that NMDWS breached its contract with USDOL [Department of Labor] by failing to comply with requirements in federal statutes, operating instructions and guidance by USDOL. Complaint, ¶¶ 315 to 320.

Doc. 10 ¶¶ 10-13. Defendants then argue in the Notice of Removal that "four (4) out of the five (5) counts pleaded by Plaintiffs are entirely dependent on substantial, disputed questions of

federal law relating to federal pandemic benefits under the CARES Act and USDOL's standards for the recoupment of overpaid federal benefits." Doc. 10 ¶ 16. They assert

> Plaintiffs' extensive reliance on federal standards for establishing and waiving overpayments, see e.g., Complaint, ¶¶ 39-60, makes this case appropriate for removal to federal court. Although Plaintiffs assert state-law claims, their claims are intricately intertwined with substantial, disputed questions of federal law. Removal will ensure consistency in the interpretation and application of the relevant federal statutes, regulations and guidance upon which Plaintiffs chiefly rely.

Doc. 10 ¶ 19. Moreover, Defendants reason, "the federal government's imposition of onerous requirements with respect to administration of federal pandemic benefits programs, combined with USDOL's inadequate guidance regarding same, raises important issues of federalism." Doc. 10 ¶ 20.

Plaintiffs move to remand the case to state court, arguing that federal-question jurisdiction does not lie because the complaint brings only state-law claims and the federal interest in the case is not "substantial." Doc. 4. Plaintiffs also ask for their attorney's fees and costs, arguing that the removal was objectively unreasonable. Doc. 4 at 10-11.

## DISCUSSION

"Federal subject matter jurisdiction is elemental. It cannot be consented to or waived, and its presence must be established in every cause under review in the federal courts." *Firstenberg v. City of Santa Fe, N.M.*, 696 F.3d 1018, 1022 (10th Cir. 2012). "The party invoking federal jurisdiction has the burden to establish that it is proper . . . ." *Salzer v. SSM Health Care of Okla. Inc.*, 762 F.3d 1130, 1134 (10th Cir. 2014). At issue in this case is the Court's jurisdiction over "civil actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331—that is, federal-question jurisdiction.

"For a case to arise under federal law within the meaning of § 1331, the plaintiff's 'well-pleaded complaint' must establish one of two things: either that federal law creates the cause of

action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Firstenberg*, 696 F.3d at 1023 (internal quotation marks omitted). Here, both parties agree that federal law does not "create the cause of action"; indeed, the CARES Act lacks a private right of action. Doc. 4 at 10; Doc. 11 at 9. Therefore, the parties focus on whether "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Cf. Firstenberg*, 696 F.3d at 1023. This is a "special and small" category of cases. *Becker v. Ute Indian Tribe of the Uintah & Ouray Rsrv.*, 770 F.3d 944, 947 (10th Cir. 2014); *Gilmore v. Weatherford*, 694 F.3d 1160, 1171 (10th Cir. 2012) (this "branch of federal question jurisdiction is exceedingly narrow"). "[I]f a claim does not present a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous cases, but rather is fact-bound and situation-specific, then federal question jurisdiction will generally be inappropriate." *Becker*, 770 F.3d at 947-48 (alterations and internal quotation marks omitted).

"To invoke this so-called 'substantial question' branch of federal question jurisdiction, a plaintiff must show that a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Becker*, 770 F.3d at 947 (internal quotation marks omitted). Plaintiffs stop just short of conceding the first two prongs of this test and make no argument regarding these first two elements. *See* Doc. 23 at 2 ("while two of Plaintiffs['] claims may actually and necessarily raise a disputed federal issue, that by itself, is insufficient to confer federal jurisdiction"); *id.* at 3 ("At best, Defendants have only satisfied the first two elements of the test."). Instead, Plaintiffs focus on the third factor—substantiality. Because the Court agrees with Plaintiffs that Defendants' argument fails at prong three, it does not move on to analyze prong four.

4

Before explaining why Defendants' argument fails, the Court first acknowledges the immediate surface appeal of Defendants' argument. In the ordinary sense of the word, of course the federal government has a "substantial" interest in preventing fraud and regulating overpayments related to a "trillion-dollar federal program[] such as the CARES Act." Doc. 11 at 7. This is particularly true given that "federal pandemic benefits are 100% federally funded" and governed by "unique federal rules and requirements applicable only to them." *Id*. at 2. And, the federal government of course has an interest in how states interpret its rules and regulations, and that states apply its rules and regulations in a consistent manner. Plaintiffs, however, are the masters of their complaint, and they chose to bring only state claims and to file those state claims in state court. Consequently, Defendants can only successfully remove this lawsuit to federal court if the lawsuit falls within the "special and small category of cases" where federal courts retain exclusive substantial-question jurisdiction. *Becker*, 770 F.3d at 947.

Although it is true that this case involves federal funds, the disbursement of which are governed by federal regulations, such facts are insufficient to qualify for substantial-question jurisdiction. Indeed, rather than constituting a small category of cases, programs under which the federal government entrusts states to distribute federal funds in accordance with federal rules and regulations abound (consider funding for highways, health care, and schools for instance). If exclusive federal jurisdiction applied to every challenge to the administration of these funds, the category of substantial-question cases would neither be special nor small. Reviewing governing and non-governing substantial-question case law, the Court concludes, despite the surface appeal of Defendants' argument, that the federal issue presented in this case is not "substantial" enough to confer exclusive federal jurisdiction.

A substantial-question analysis begins with the Supreme Court's decision in *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180 (1921). *Smith* presented the question of whether a bank "could not purchase certain bonds issued by the Federal Government because the Government had acted unconstitutionally in issuing them." *Gunn*, 568 U.S. at 261 (citing *Smith*, 255 U.S. 180). Thus, the lawsuit in *Smith* presented the substantial question of "the constitutional validity of an act of Congress which is directly drawn in question." *Id.*

More than eighty years later, the Supreme Court relied on *Smith* to conclude that a state-law quiet-title action implicating the question of whether the IRS failed to comply with certain federally imposed notice requirements raised a substantial federal question. *Grable & Sons Metal Prods., Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308 (2005). In its decisions since *Grable*, however, the Supreme Court has limited, rather than expanded, the substantial-question jurisdiction doctrine.

The year after it decided *Grable*, the Supreme Court issued its decision in *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006). *Empire* involved a federal health insurer's reimbursement claim against the estate of Joseph E. McVeigh, who incurred significant medical expenses after an accident, filed a lawsuit, and settled with the parties that allegedly caused his injuries. *Id.* at 687. McVeigh's insurer under his federal employee health benefits plan, Empire HealthChoice Assurance, had paid $157,309 for medical care he received in connection with this accident. *Id*. When Empire learned about the McVeigh settlement, it sought reimbursement from the settlement proceeds. McVeigh's estate disagreed that Empire was entitled to this reimbursement. *Id.* at 687. Consequently, Empire filed suit in federal court, alleging that the estate was in breach of the reimbursement provision of the federal health benefits plan. *Id.* at 687-88. Empire (along with the United States' support as amicus curiae)

argued that federal jurisdiction existed over the lawsuit because "(1) reimbursement directly affects the United States Treasury and the cost of providing health benefits to federal employees;[2] and (2) Congress had expressed its interest in maintaining uniformity among the States on matters relating to federal health-plan benefits." *Id.* at 688. The Supreme Court, however, determined that these facts were insufficient to establish substantial-question jurisdiction. *Id.* at 700-01.

Thus, *Empire*, like the present case, involved whether a non-federal government entity could recoup its disbursement of federal funds upon establishing that the amount ultimately paid out was greater than the amount ultimately determined to be owed. A question in both cases can be summarized as whether a state or private actor complied with federal law in the administration or distribution of federal benefits. In *Empire*, the reimbursement of federal funds did not establish a substantial question for federal jurisdiction purposes because "the reimbursement claim was triggered, not by the action of any federal department, agency, or

---

[2] Reimbursement would directly affect the United States Treasury because, under the Federal Employees Health Benefits Act of 1959 (FEHBA), any money "clawed back" from the settlement proceeds would go directly into the Treasury. The FEHBA establishes a comprehensive program of health insurance for federal employees. *Empire*, 547 U.S. at 682. The FEHBA assigns to the United States Office of Personnel Management ("OPM") the responsibility for negotiating and regulating health-benefits plans for federal employees with private health insurance carriers. *Id.* at 683-84. Under the terms of these plans, "the Federal Government pays about 75% of the premiums; the enrollee pays the rest. Premiums thus shared are deposited in a special Treasury Fund, the Federal Employees Health Benefits Fund. Carriers draw against the Fund to pay for covered health-care benefits." *Id.* at 684 (citations omitted). The contract between OPM and the private carrier requires the carrier to make a "reasonable effort to seek recovery of amounts it is entitled to recover in cases brought to its attention." *Id.* at 685 (internal alterations omitted). Reimbursements obtained by the carrier must be returned to the Treasury Fund. *Id.* In contrast to *Empire*, CARES Act overpayments are recovered by the state agency. 15 U.S.C. § 9025(e)(3)(A). CARES Act distributions "shall not be required to be repaid" to the federal treasury. *Id.* § 9025(d)(1)(B), (2)(B). This distinction arguably makes the federal interest in *Empire* stronger than the federal interest in the present case.

service, but by the settlement of a personal-injury action launched in state court, and the bottom-line practical issue is the share of that settlement properly payable to Empire." *Id.* at 700 (citation omitted). Similarly, the collection of alleged CARES overpayments at issue in this case was not triggered by the action of any federal department, agency, or service. Instead, the alleged overpayments are the product of CARES money paid out to state residents by a state agency. Like *Empire*, the present case does not implicate the actions of a federal agency and does not appear to have consequences for the federal system as a whole.

To Defendants' credit, their arguments have logical appeal. In fact, similar arguments in *Empire* convinced four justices of the United States Supreme Court that federal substantial-question jurisdiction should exist. Writing for the dissenters, Justice Breyer observed, "There is little about this case that is not federal." *Id*. at 703 (Breyer, J., dissenting). "[T]he statute is federal, the program it creates is federal, the program's beneficiaries are federal employees working throughout the country, the Federal Government pays all relevant costs, and the Federal Government receives all relevant payments. The private carrier's only role in this scheme is to administer the health benefits plan for the federal agency in exchange for a fixed service charge." *Id*. at 704. Justice Breyer further noted that the governing provisions "were written by a federal agency acting pursuant to a federal statute that creates a federal benefit program for federal employees." *Id.* at 707. Although the CARES Act funds at issue here were not directed to the benefit of federal employees, a federal agency acting pursuant to a federal statute that created a federal benefit program did write many of the governing regulations.

Given this reality, the Supreme Court recognized in *Empire* that the United States "has an overwhelming interest in attracting able workers to the federal workforce, and in the health and welfare of the federal workers upon whom it relies to carry out its functions." *Id.* at 701

8

(majority op., internal quotation marks omitted). But those interests were not substantial enough to make a "a discrete and costly federal case" out of "an insurer's contract-derived claim to be reimbursed from the proceeds of a federal worker's state-court-initiated tort litigation." *Id.* In short, the arguments Defendants make in support of substantial-question federal jurisdiction are similar to the arguments a majority of the United States Supreme Court rejected in *Empire*.[3]

And the Supreme Court's more recent statement on the subject, in *Gunn v. Minton*, does nothing to expand substantial-question federal jurisdiction. 568 U.S. 251 (2013). *Gunn* involved a claim that a patent attorney committed legal malpractice in not making an argument under patent law that a district court precluded as waived. *Id*. at 254-55. Evaluating the importance of the argument not made necessarily required the state court to interpret patent law. Nonetheless, the Supreme Court concluded that the case presented no substantial federal question. *Id.* at 261. It concluded that the state court's interpretation of patent law would not finally determine any issue of federal law because the state court decision could "not change the real-world result of the prior federal patent litigation"; that is, "the patent [would] remain invalid." *Id.* Nor would "allowing state courts to resolve these cases undermine the development of a uniform body of patent law" because the results would be nonprecedential as to federal law and the state courts can be trusted to apply the same federal precedents that would govern in a federal forum. *Id.* at 261-62 (internal quotation marks omitted). Further, "the possibility that a state court will incorrectly resolve a state claim is not, by itself, enough to trigger the federal courts' . . . jurisdiction, even if the potential error finds its root in a misunderstanding of [federal] law." *Id.*

---

[3] The majority rejected the dissent's characterization of *Empire* as "pervasively federal" partly because the provisions at issue were "linked together and depend upon a recovery from a third party under terms and conditions ordinarily governed by state law." *Empire*, 547 U.S. at 692. Similarly, although Plaintiffs' claims in the present case may call for the interpretation of federal provisions, each claim rests on state law.

at 263. As a result, the Supreme Court concluded, "The present case is 'poles apart from *Grable*,'" in which a state court's resolution of the federal question 'would be controlling in numerous other cases.'" *Id.* at 262 (quoting *Empire*, 547 U.S. at 700). The Supreme Court noted that in *Grable*:

> We emphasized the Government's "strong interest" in being able to recover delinquent taxes through seizure and sale of property, which in turn "required clear terms of notice to allow buyers to satisfy themselves that the Service has touched the bases necessary for good title. The Government's "direct interest in the availability of a federal forum to vindicate its own administrative action" made the question "an important issue of federal law that sensibly belonged in a federal court."

*Gunn*, 568 U.S. at 260-61. Thus, in deciding whether substantial-question jurisdiction exists, courts are not to focus on "the importance of the issue to the plaintiff's case and to the parties before" the court. *Id*. at 260. The substantiality inquiry "looks instead to the importance of the issue to the federal system as a whole." *Id.*

The Sixth Circuit has distilled these Supreme Court cases into a helpful four-factor test to analyze substantial-question jurisdiction. This test asks: "(1) whether the case includes a federal agency, and particularly, whether that agency's compliance with the federal statute is in dispute; (2) whether the federal question is important (i.e., not trivial); (3) whether a decision on the federal question will resolve the case (i.e., the federal question is not merely incidental to the outcome); and (4) whether a decision as to the federal question will control numerous other cases (i.e., the issue is not anomalous or isolated)." *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 570 (6th Cir. 2007).

Applying this four-factor test here favors remand. First, the claim, like in *Empire* (and unlike in *Grable*), was not triggered by the action of a federal agency. It was triggered by a state agency's administration of a benefit program in which the state agency worked in partnership with the federal government. And the bottom-line issue in this case is whether the state agency

properly administered this program (albeit a program funded by federal dollars and governed by federal regulations). Second, although the question of the administration of federally funded benefits is important, in setting up a partnership whereby states would be charged with following CARES Act rules and regulations in disbursing the federal funds, Congress entrusted states with reading and following these rules and regulations. Moreover, *Empire* makes clear that the federal government's interest in the proper disbursement of its funds does not necessarily confer federal jurisdiction over disputes about how a non-federal entity administered those funds. Such adjudication can be left to state courts.

Third, the federal questions here will not resolve the case because Plaintiffs' state-law claims implicate issues other than compliance with federal law. Even if the federal questions were resolved, a court would still have to determine Plaintiffs' property interests under state law; whether the state agency complied with state statutes and rules; and whether Plaintiffs have a right to relief under state contract law or equitable principles. Doc. 10 at 64-73.

As to the fourth *Mikulski* prong, whether a decision as to the federal question will control numerous other cases, Defendants argue that the federal government has an interest in ensuring conformity with its laws and that "the federal government [has] a vested interest in this litigation and the implications it has for New Mexico and other states." Doc. 11 at 8-9. Neither party, however, focuses on the extent to which a state court or federal court decision in this case will control the outcome in other cases. Aside from noting that there is a request for declaratory relief, Doc. 10 at 73-74, the Court likewise does not focus on this question. Given the extent to which the first three prongs of the *Mikulski* test tilt in Plaintiffs' favor and given the lack of briefing on this point, the Court need not reach a conclusion as to the fourth prong.

Defendants, however, have one final argument. They note that the federal government

has been explicit in stressing the need to maintain "program integrity" in federal pandemic benefit programs and has made fraud prevention a "top priority." Doc. 11 at 7-9. This is true. But the federal government always has a strong interest in the integrity of programs it funds and in preventing fraud. Despite this strong interest, federal courts have overwhelmingly held that questions concerning state benefit programs "funded and regulated by the federal government" do not present a substantial federal question. *E.g.*, *Vermont v. McGrx, Inc.*, No. 10-CV-95, 2010 WL 3767794, at *7 (D. Vt. Sept. 16, 2010) (state contract claim premised on violation of federal Medicaid laws where federal funds are approximately 60% of the state Medicaid's budget did not present substantial federal question); *Pennsylvania v. Eli Lilly & Co., Inc.*, 511 F. Supp. 2d 576, 585 (E.D. Pa. 2007) (federal Medicaid funding "does not, without more, confer federal jurisdiction"); *Ohio v. Jones*, No. 12cv1134, 2012 WL 2412153, at *4 (N.D. Ohio June 26, 2012) ("Congress delegated the administration and implementation of Medicaid to the states. That delegation, coupled with the fact that Congress did not provide for a private federal right to action, shows it intended litigation over the Estate Recovery provisions of Medicaid to be conducted at the state level."). Defendants' argument fails to distinguish the CARES Act program from the federal employee benefits program (think *Empire*) or Medicaid. There is no reason to believe that state courts cannot faithfully interpret federal regulations and apply them to the actions of a state agency in the CARES context, just as in the contexts of Medicaid and federal employee benefits.

Notably, Defendants do not cite a single case—other than *Grable*—which finds "substantial" federal jurisdiction in even arguably similar circumstances. In contrast, Plaintiffs cite a series of cases declining jurisdiction in similar situations. *See Scott v. Gate Gourmet, Inc.*, No. 20cv11033, 2021 WL 677897, at *6 (C.D. Cal. Feb. 22, 2021) (no substantial federal

question where claims did not "arise from the disbursement of the federal funds or appear to require an interpretation of the legality of the [federal] government's disbursement of funds pursuant to the CARES Act"); *Young v. AmeriHome Mortg. Co., LLC*, No. 22cv1163, 2022 WL 3371341, at *3 (S.D. Cal. Aug. 16, 2022) (although the CARES Act itself is important to the federal government, "[t]he success of Covid-19 relief efforts will not rise or fall based on the interpretation of this one statutory section"); *Healthcare Ventures of Ohio, LLC v. HVO Operations Windup LLC*, No. 20cv4991, 2020 WL 6688994, at *8 (S.D. Ohio Nov. 13, 2020) (no substantial federal question in case involving a dispute over $1.19 million of funding under the CARES Act); *Cantu v. Sav.*, No. 21cv224, 2021 WL 8944405, at *2 (S.D. Tex. Oct. 6, 2021) (implying in passing that the CARES Act's foreclosure moratorium does not fall within the "special and small category of cases" that meet this test). Thus, the weight of federal case law on this topic strongly weighs in Plaintiffs' favor. In accordance with this weight of authority, the Court will remand this case to state court.

Finally, Plaintiffs argue that, if their motion to remand is granted, an award of costs, expenses, and attorney fees is appropriate. Doc. 4 at 10-11. Plaintiffs are correct that "[a]n order remanding [a] case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. 1447(c). But, "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Defendants had an objectively reasonable basis for seeking removal.

As Plaintiffs acknowledge, Supreme Court precedent recognizes that, even where a plaintiff files a complaint in state court and brings only state causes of action, the existence of a

13

"substantial federal question" can support removal of a complaint to federal court. Although the weight of existing federal case law tilts against Defendants, only a handful of district courts have addressed whether disputes related to the disbursement of CARES Act funding presents a substantial federal question. And none of these cases are binding. Given the Supreme Court's recognition of substantial-question jurisdiction in *Grable*, the logical underpinnings of Defendants' arguments, and the lack of on-point binding precedent, the Court cannot conclude that Defendants lacked an objectively reasonable basis for seeking removal.

Accordingly, the Court denies Plaintiffs' request for fees.

## CONCLUSION

Plaintiffs' Motion For Remand, Doc. 4, is GRANTED IN PART and DENIED IN PART. The Court grants the request to remand to state court but denies the request for fees. A separate order of judgment will follow.

_____
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE